UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
FRANK SOKOLOVIC,

                Plaintiff,

      v.                                **MEMORANDUM AND ORDER**

CVS HEALTH; BRIGGS MEDICAL SERVICE       17-CV-6609 (RPK) (SJB)
COMPANY; MEDIHEAT, INC.; SHANGHAI
INTCO MEDICAL SUPPLY CO., LTD
d/b/a BASIC MEDICAL INDUSTRIES, INC.;
SHANGHAI INTCO MEDICAL
INDUSTRIES, INC., JOHN DOES 1–15;
and ABC CORPORATIONS 1–10,

                Defendants.
----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Frank Sokolovic brings this products-liability action relating to a CVS cold pack

that allegedly leaked onto his arm, causing a second-degree burn.  Before the Court are four

motions to exclude expert testimony and three cross-motions for summary judgment on plaintiff's

claims.  For the reasons discussed below, defendants' motion to preclude the testimony of

plaintiff's liability expert, Dr. Robert Sugarman, is granted in part, and the motions to preclude

expert testimony are otherwise denied, as are the cross-motions for summary judgment on

plaintiff's claims.

## BACKGROUND

      The facts in this section are taken from the parties' exhibits and their statements of fact

filed in accordance with Local Rule 56.1, unless otherwise noted.

## I.    Factual Background

      Plaintiff is an experienced health care professional who used to work as a radiologist

assistant.  CVS's Local Rule 56.1 Statement ¶¶ 12, 17 ("CVS's 56.1 Statement") (Dkt. #123-1).

The defendants are various entities involved in the manufacture and distribution of CVS's Instant Cold Pain Relief Packs. *Id.* at ¶ 18. Shanghai Intco Medical Supply Co., Ltd. d/b/a Basic Medical Industries, Inc. and Shanghai Intco Medical Industries, Inc. manufactured the pack at issue in this case, and then sold the cold pack to Healthsmart Medical Service Company d/b/a Briggs Healthcare (collectively the "Briggs defendants"). *Id.* at ¶¶ 18–19. Briggs then sold the cold pack to MediHeat, Inc., which in turn sold the cold pack to CVS Health. *Id.* at ¶¶ 20–21.

Around July 8, 2015, plaintiff purchased a CVS Instant Cold Pain Relief Pack and stored it in his bathroom. Pl.'s Local Rule 56.1 Statement ¶¶ 1,7 (Pl.'s 56.1 Statement") (Dkt. #122-1); Decl. of Yelena Graves, Ex. H 47:19–22 ("Sokolovic Depo."). (Dkt. #123-11). Such cold packs are comprised of a plastic container filled with two ingredients: water and a plastic bag containing ammonium nitrate. Pl.'s 56.1 Statement ¶ 2; CVS's 56.1 Statement ¶ 29. When the cold pack is squeezed, the inner plastic bag ruptures and the ammonium nitrate mixes with the water. Pl.'s 56.1 Statement ¶¶ 2–3; CVS's 56.1 Statement ¶ 31. This produces an endothermic reaction that makes the pack cold. Pl.'s 56.1 Statement ¶ 3; CVS's 56.1 Statement ¶ 32.

As relevant here, the cold pack includes the following warnings:

- "WARNING: Failure to follow instructions or warnings could result in serious injuries such as frostbite."

- "Remove cold pack if skin feels too cold or if you feel uncomfortable."

- "Extreme cold can cause frostbite or burns. Use with towel or other insulating material."

- "Do not use for more than 10–15 minutes in the same location."

- "If solution contacts eyes, skin or open wounds, flush liberally with water. If solution is swallowed, give one or two glasses of milk or water and induce vomiting. Contact poison control immediately. For external use only."

- "CONTENTS: Ammonium nitrate and water."

CVS's 56.1 Statement ¶ 33; Decl. of Yelena Graves, Ex. J 2 ("Cold Pack Pictures") (Dkt. #123-13).

On July 15, 2015, plaintiff used the cold pack to treat a sore elbow.  Pl.'s 56.1 Statement ¶ 7.  Plaintiff testified at one point in his deposition that he did not first read the cold pack's instructions or inspect the cold pack to ensure that it was intact, but he later testified that he "briefly look[ed]" at the instructions.  *Id.* at ¶ 12; Sokolovic Depo. 59:4–13, 62:6–9, 170:3–16.  Plaintiff activated the cold pack and placed it on a towel over his arm.  Pl.'s 56.1 Statement ¶¶ 7, 13.  Within four to five minutes, plaintiff felt a burning sensation.  *Id.* at ¶ 8.  The contents of the cold pack had leaked onto plaintiff's arm, and a blister had formed.  *Id.* at ¶ 9.  Plaintiff later discovered a hole in the cold pack.  *Id*. at ¶ 45.  Plaintiff asserts that he suffered a second-degree chemical burn, that his arm is now permanently scarred, and that he now suffers from a pigmentation disorder known as vitiligo.  *Id.* at ¶¶ 10, 82.

## II.   Procedural Posture

In November 2017, plaintiff filed suit against defendants, bringing claims under New York State law for (i) defective manufacturing, (ii) defective design, (iii) failure to warn of the cold pack's danger, (iv) breach of implied warranty, and (v) negligence.  Second Am. Compl. ¶¶ 15–29 (Dkt. #28).

After plaintiff filed suit, CVS tendered its defense and indemnity to MediHeat, which accepted the tender.  CVS's 56.1 Statement ¶¶ 26–27.  MediHeat then tendered its defense and indemnity to Briggs, which refused to accept the tender.  See id. at ¶¶ 28, 90–91.  CVS and MediHeat filed cross-claims against the Briggs defendants for (i) contribution, (ii) contractual indemnification and breach of contract, and (iii) common law indemnification.  CVS Defs.' Answer to Second Am. Compl. with Crossclaims ¶¶ 1–20 (Dkt. #32).

Discovery closed in September 2021, and the parties have retained the following experts:

A.      **Plaintiff's Liability Expert – Dr. Robert Sugarman**

Plaintiff retained Dr. Robert Sugarman, who is "an expert in the fields of human factors engineering and physics," to analyze "the adequacies of the warnings and/or instructions" provided by the cold pack.  Decl. of Yelena Graves, Ex. C-6, at 1 ("Sugarman Oct. 3, 2018 Report") (Dkt. #116-4(6)).  The human-factors field includes the study of "[t]he design of warnings and the systematic analysis of responses to hazard communications."  Decl. of G. Martin Meyers, Ex. 1, at 1 ("Hall Apr. 29, 2021 Report") (Dkt. #133-3).

In connection with this analysis, Dr. Sugarman reviewed plaintiff's complaint, plaintiff's deposition testimony, photographs of plaintiff's injury, photographs of the cold pack, a New Jersey Department of Health fact sheet on ammonium nitrate, and a Thermo Fisher safety data sheet on ammonium nitrate; however, Dr. Sugarman did not review the safety data sheet issued by the cold pack's manufacturers.  Decl. of Yelena Graves, Ex. A 1 ("Sugarman Dec. 27, 2020 Report") (Dkt. #116-2); *see* Decl. of Yelena Graves, Ex. M 46:12–25 ("Sugarman Depo.") (Dkt. #123-16). Dr. Sugarman stated that he uses a four-step methodology to evaluate the adequacy of a product's warnings: (1) determining what possible hazards the product could have, (2) considering the degree of risk posed by those hazards, (3) following a hazard mitigation hierarchy to determine whether there should be any changes to a product's design, guardings, or warnings; and (4) evaluating the product's existing warnings.  Sugarman Depo. 40:13–43:23.

Dr. Sugarman opined that the cold pack contained inadequate warnings and that those inadequate warnings caused plaintiff's injury.  He stated, "the burn suffered by Mr. Sokolovic . . . resulted from the failure of the manufacturers and distributors of the Cold Pack to provide him with adequate warnings, and/or adequate instructions relating to the safe use of the Cold Pack product he was attempting to utilize, at the time his burn injury occurred."  Sugarman Oct. 3, 2018 Report 1–2.  Dr. Sugarman reasoned that a warning was required because "[t]he chemical hazard

4

of the active ingredient of this product is made very clear in the New Jersey Department of Health, Hazardous Substance Fact Sheet for ammonium nitrate," which "specifically cautions against skin contact" and provides a first aid instruction to "[i]mmediately wash contaminated skin with large amounts of water" and "[q]uickly remove contaminated clothing" if contact occurs. Decl. of G. Martin Meyers, Ex. 1, at 1 ("Sugarman Apr. 30, 2020 Report") (Dkt. #117-2) (quoting Decl. of Yelena Graves, Ex. F 1 ("N.J. Dep't of Health Fact Sheet") (Dkt. #116-7)). Dr. Sugarman also stated that "[t]he warning regarding burns to skin is also clear in the Thermo Fisher [safety data sheet] for this chemical." Sugarman Dec. 27, 2020 Report 2. Dr. Sugarman opined that the cold pack should have warned users "that the product could cause chemical burns if the ingredients contacted the skin" and "that users should periodically check their skin for leakage or burns." Sugarman Apr. 30, 2020 Report 3. He "did not propose a particular burn warning" and did not know how "frequently or periodically" users should check for leaks. Sugarman Depo. 99:5–7, 101:18–24.

Dr. Sugarman also opined during his deposition that the cold pack's leak was caused by a manufacturing defect. He stated that, based on "pure logic" and "a little bit of physics," there "had to have been a weak spot . . . created during manufacture" that opened when plaintiff activated the cold pack. *Id*. at 53:3–54:9. Dr. Sugarman explained that, based on the "forces [that] were on this packaging," the relevant "physics," and "the chain of events as described in [plaintiff's] testimony," the leak "couldn't have been created any other way." *Id*. at 54:10–16, 57:3–8. And while Dr. Sugarman stated that he "can't know for sure a hundred percent," *id*. at 25:23–26:6, that a defect occurred during the manufacturing process because he was not "part of the quality control team at the factory," *id*. at 55:3–56:12, Dr. Sugarman opined that "it is an outlandish and very low

risk" that the package was punctured "between the moment [it] left the manufacturer's control and the moment Mr. Sokolovic took it off his arm," *id.* at 56:23–57:20.

### B.      CVS Defendants' Liability Expert – Steven Hall

The CVS defendants retained Steven Hall as a liability expert.  Pl.'s Rule 56.1 Statement ¶¶ 20–22; CVS's Rule 56.1 Statement ¶ 85.  Mr. Hall issued an expert report, in which he opined that "the evidence in this case, the properties of the ammonium nitrate solution as indicated in the [manufacturer's safety data sheet], and literature in the field of warnings do not suggest that the two proposed warnings [by Dr. Sugarman] would have reliably prevented Mr. Sokolovic's injuries, nor do they suggest that these warnings were necessary and appropriate to prevent such injuries." Hall Apr. 29, 2021 Report 13.

As to Dr. Sugarman's opinion that the cold pack should include a chemical-burn warning, Mr. Hall opined that such a warning would be both unnecessary and inconsistent with the cold pack manufacturer's safety data sheet.  *Id.* at 11–12.  Mr. Hall stated that "a reasonable reader [would] infer" from the cold pack's existing warnings—particularly the warnings "that failure to follow instructions can result in serious injuries," "that the pack contains ammonium nitrate," and "that one should 'flush liberally with water' if the solution contacts the skin"—that "the ammonium nitrate solution can harm the skin, and that skin contact should be avoided."  *Id.* at 11. Further, Mr. Hall opined that the proposed warning "would not be consistent with the Safety Data Sheet (SDS) for this product, which provides chemical hazard information for the ammonium nitrate solution."  *Ibid.*  Mr. Hall reasoned that the safety data sheet "indicates that the solution is a skin irritant, but is not corrosive to skin," and that a chemical-burn warning "would only be warranted for a solution that is categorized as corrosive."  *Id.* at 11–12.  Mr. Hall thus concluded that "plaintiff's proposed warning about 'skin burns' would therefore be incorrect and misleading." *Id.* at 12.

As to Dr. Sugarman's opinion that the cold pack should instruct users to check periodically for leaks, Mr. Hall opined that "the facts of this case do not suggest that such a warning would reliably have changed the outcome of this incident." *Id*. at 12. Mr. Hall reasoned that "it is not clear that additional warnings would have been read" because plaintiff testified "that he knew how to use the pack and did not attend to the instructions." *Ibid*. Mr. Hall also reasoned that, "to the extent that he did read such a warning, it is not at all clear that it would have changed his behavior in such a way as to prevent his injuries" because "it is not clear exactly when Mr. Sokolovic would have checked" for leaks "or whether he would have actually removed the pack sooner." *Id*. at 12–13. Finally, Mr. Hall opined that "such an instruction would seem to have very limited utility" because "exposures that can occur while following the instructions that were provided would not be expected to result in permanent injuries." *Id*. at 13.

In reaching these conclusions, Mr. Hall criticized Dr. Sugarman's reliance on the New Jersey Department of Health fact sheet and the Thermo Fisher safety data sheet. He asserted that the manufacturer's safety data sheet "provides what should be the most specific and accurate information regarding the hazards of the particular ammonium nitrate solution in the cold pack." *Id*. at 11 n.1.

### C.   Briggs Defendants' Liability Expert – Harold Ehrlich

The Briggs defendants retained Harold Ehrlich as a liability expert. Pl.'s Rule 56.1 Statement ¶ 51. Mr. Ehrlich opined that "the warnings on the cold pack are adequate and that Mr. Sokolovic's incident was not caused by a failure to warn." Decl. of G. Martin Meyers, Ex. 1, at 6 ("Ehrlich Feb. 24, 2021 Report") (Dkt. #130-3). In reaching this conclusion, Mr. Ehrlich stated that "[a]n adequate warning should alert people to a specific hazard(s), the consequences of encountering the hazard, the severity of those consequences, and should instruct people on how to avoid the hazard." *Ibid*. Mr. Ehrlich reasoned that the cold pack's warnings "alert users to the

7

hazard of a burn as well as the consequences of encountering the hazard," that "[t]he warnings also call out the serious nature of those consequences," and that "the cold pack warning provides means for avoiding the hazard such as using a towel, removing the cold pack if too cold or uncomfortable, do not use for more than 10 or 15 minutes, and flush liberally with water if solution contacts skin." *Ibid*.

### D. Plaintiff's Independent Medical Expert – Dr. Michael Weinberger

Dr. Michael Weinberger, a pain-management specialist, issued a report relating to an independent medical examination of plaintiff in July 2021. *See* Decl. of Yelena Graves, Ex. A ("Weinberger Aug. 11, 2021 Report") (Dkt. #112-2). The report recounts plaintiff's description of the cold-pack incident, his subsequent treatment, and his subjective complaints. *Id*. at 1–2. Dr. Weinberger stated that plaintiff complained of a "constant" pain that "has not changed over time" and increases with touch. *Id*. at 1. On physical examination, Dr. Weinberger noted: "motor strength 5/5 throughout the upper extremities, Sensory exam intact but patient complained of allodynia over the distal upper arm on the right. There was no change in temperature, hair or nails. No edema." *Id*. at 2. Dr. Weinberg opined that plaintiff's complaints are "consistent with neuropathic pain from injury to cutaneous nerve fibers." *Ibid*.

Plaintiff served defendants with Dr. Weinberger's report on August 19, 2021. *See* Decl. of Yelena Graves, Ex. E ("Aug. 19, 2021 Email") (Dkt. #114-3). The disclosure did not include a list of materials that Dr. Weinberger relied upon in forming his opinion, a list of other cases in which Dr. Weinberger has testified, or his compensation. *See ibid*.

On September 28, 2021—the same day that discovery in this action closed—the CVS defendants disclosed the supplemental expert report of Dr. Adam Bender, whose testimony is not at issue for purposes of this Order. *See* Decl. of Yelena Graves, Ex. D 1 ("CVS's Supp. Expert Witness Disclosure") (Dkt. #114-4). Dr. Bender opined that plaintiff's "neurological examination

8

is objectively normal and there is no objective evidence of a neuroma or any other neurological problem that would explain his cutaneous dysesthesias." *Id.* at 13.

On November 8, 2021, plaintiff served defendants with a list of materials that Dr. Weinberger relied upon in forming his opinions as well as a supplemental report responding to Dr. Bender's opinion. *See* Decl. of G. Martin Meyers, Ex. A ("Weinberger Nov. 8, 2021 Report") (Dkt. #113-7); Decl. of G. Martin Meyers, Ex. 3 ("Pl.'s Nov. 8, 2021 Supp. Disclosures") (Dkt. #113-4). Dr. Weinberger opined, "I remain certain, to a reasonable degree of medical certainty, based upon the independent medical examination I conducted, that Mr. Sokolovic has in fact sustained damage to the cutaneous nerves of his arm and elbow, at the site of his chemical burn. As a result, my review of Dr. Bender's opinions in his report of [September] 28th does not change any of the opinions expressed in my report of August 11, 2021." *Id.* at 1–2.

## III.   Motions Before the Court

The parties have filed four motions to exclude expert testimony and three cross-motions for summary judgment. Specifically, the CVS defendants move *in limine* to exclude the testimony of Dr. Sugarman and Dr. Weinberger, *see* Mot. *in Limine* to Exclude Testimony of Robert C. Sugarman (Dkt. #115); Mot. *in Limine* to Exclude Testimony of Michael L. Weinberger (Dkt. #112), and plaintiff moves *in limine* to exclude the testimony of Mr. Hall and Mr. Ehrlich, *see* Mot. *in Limine* to Exclude Testimony of Stephen Hall (Dkt. #133); Mot. *in Limine* to Exclude Testimony of Harold Ehrlich (Dkt. #130).

The CVS defendants move for summary judgment on plaintiff's claims and their cross-claims regarding indemnification, *see* CVS's Mot. for Summ. J. (Dkt. #119); the Briggs defendants move for summary judgment on plaintiff's claims, *see* Briggs' Mot. for Summ. J. (Dkt. #111), and plaintiff moves for partial summary judgment on only his failure-to-warn claim, *see* Pl.'s Cross-Mot. for Partial Summ. J. (Dkt. #121). In response to defendants' motions, plaintiff has withdrawn

his design-defect claim.  *See* Mem. in Opp'n to Mot. to Exclude Testimony of Robert C. Sugarman 14 ("Opp'n to Sugarman Mot. *in Limine*") (Dkt. #117) ("Plaintiff does not intend to pursue a claim of 'design defect' with respect to the Cold Pack.").

## DISCUSSION

The motion to preclude Dr. Sugarman's testimony is granted in part and denied in part. The motions to preclude expert testimony are otherwise denied, as are the cross-motions for summary judgment on plaintiff's claims.  A separate order addresses the CVS defendants' motion for summary judgment on their cross-claims regarding indemnification.

## I.    Motions to Preclude Expert Testimony

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if four conditions are met: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  A party seeking to admit expert testimony under Rule 702 "must establish admissibility by a preponderance of the evidence."  *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 392 F. Supp. 3d 382, 397 (S.D.N.Y. 2019) (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)).  The Rule 702 standard for the admissibility of expert testimony is "liberal."  *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).

Under Rule 702, the court must ensure that the "expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *accord United States v. Willis*, 14 F.4th 170, 185 (2d Cir. 2021).  That "gatekeeping role" requires the court to "consider the indicia of reliability identified in Rule 702,

namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quotation marks and citation omitted) (quoting Fed. R. Evid. 702); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (holding that courts have the same "gatekeeping" role with respect to "technical" and "other specialized" knowledge).  Factors that bear on reliability include whether a theory or technique "can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the technique's "known or potential rate of error" and the existence of standards controlling the technique's operation, and "general acceptance" of the technique or theory in the relevant scientific community.  *Amorgianos*, 303 F.3d at 266 (quoting *Daubert*, 509 U.S. at 593–94).

In short, the court must "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand."  *Id.* at 267.  The court's analysis "must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions."  *Id.* at 266.  However, "only serious flaws in reasoning or methodology will warrant exclusion."  *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (citing *Amorgianos*, 303 F.3d at 267).  For example, expert testimony should be excluded as unreliable if the testimony "is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or [is] in essence 'an apples and oranges comparison.'"  *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (citation omitted).

Other deficiencies in the expert's assumptions go to the testimony's "weight, not [its] admissibility." *Ibid.* (citation omitted).

## A.     Dr. Sugarman

The motion to exclude Dr. Sugarman's opinions is granted in part and denied in part. Defendants raise three arguments in support of their motion.  First, they contend that Dr. Sugarman's opinion that the cold pack's leak was caused by a manufacturing defect should be excluded as speculative.  Mem. in Supp. of Mot. to Exclude Dr. Sugarman's Testimony 11–12 ("Sugarman Mot. *in Limine*") (Dkt. #116).  Second, they contend that Dr. Sugarman's opinions on warnings should be excluded because Dr. Sugarman did not follow his own methodology.  *Id.* at 8–9.  Finally, defendants argue that Dr. Sugarman's opinions lack any factual or scientific foundation.  *Id.* at 9–11.[1]  The motion is granted as to Dr. Sugarman's manufacturing-defect testimony and denied as to the remaining testimony.

### 1.    Dr. Sugarman May Not Opine on a Manufacturing Defect.

Dr. Sugarman's opinion that the cold pack's leak was caused by a manufacturing defect is insufficiently reliable to be admissible.  "[A] trial judge should exclude expert testimony if it is speculative or conjectural."  *Zerega*, 571 F.3d at 213–14.  This means that "[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion."  *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006).  An opinion that is "based on 'sheer surmise and conjecture rather than on any scientific basis'" is "insufficiently substantiated to be admissible as expert testimony."  *Id*. at 126; *see Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules

---

[1] Defendants also argue that Dr. Sugarman should be precluded from testifying on the cold pack's design.  Sugarman Mot. *in Limine* 12.  Because plaintiff has abandoned his design-defect claim, this motion is granted as unopposed.  *See* Opp'n to Sugarman Mot. *in Limine* 14 ("Plaintiff is not pursuing a design defect claim.").

of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.   A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Dr. Sugarman's opinion as to a manufacturing defect fails under this standard. Dr. Sugarman opined that the cold pack's leak was caused by a weakness in its outer packaging or seam, but he admitted that this opinion was speculative:

> Q:  Do you have an understanding as to what caused the leak of the cold pack?
>
> A:  Specifically what caused the leak?  I can only surmise.  I can't know for sure a hundred percent, but there is only really one logical possibility.
>
> Q:  But you don't know.  Correct?
>
> A:  That's right.
>
> Q:  Ultimately, you don't know.  Correct?
>
> A:  That's right.

Sugarman Depo. 25:21–26:6.   Dr. Sugarman later stated that he had no facts supporting his conclusion that the leak was the result of a manufacturing defect:

> Q:  So you are surmising that the hole in the pack happened when Mr. Sokolovic squeezed the pack.  Is that correct?
>
> A:  That's my conclusion, yes.
>
> Q:  Do you have any facts that support your belief that this is what happened?
>
> A:  No.  As I said before, I can't be a hundred percent.  I can't be sure of that.  I can only surmise.
>
> Q:  Understood.  Have you performed any tests on CVS cold packs, like the one we are discussing here, or other cold packs of similar kind to determine whether squeezing the cold pack can cause a leak?
>
> A:  No.
>
> Q:  Are you aware of any scientific literature or studies that show that squeezing a cold pack of this kind can cause a leak, or is likely to cause a leak?

A:  No.  I have never read a study about that, no.

*Id*. at 26:20–27:16.

And although Dr. Sugarman later testified that his opinion was based on "pure logic . . . and a little bit of physics," including consideration of the "forces [that] were on this packaging," *id*. at 54:5–16, Dr. Sugarman identified no methodology, reliable or otherwise, that he applied in concluding that the leak was caused by a manufacturing defect.  Dr. Sugarman did not inspect the specific cold pack that plaintiff used.  *Id*. at 130:10–14.  Nor did he perform "any study or analysis of the plastic involved in making these cold packs . . . other than to handle it and determine that it was very substantial and seemed to be a material that would be very hard to rip through or to puncture."  *Id*. at 131:4–10.  Indeed, Dr. Sugarman did not even know where in the cold pack the leak occurred, whether it "was in the seam, in the middle of the cold pack, or somewhere else."  *Id*. at 130:23–131:3.

In light of these deficiencies, the Court cannot conclude that Dr. Sugarman's opinion as to a manufacturing defect is sufficiently reliable to be admissible.  *See, e.g.*, *Riegel*, 451 F.3d at 127 ("Milo essentially provided no explanation as to how he had reached his conclusion that the rupture must have been caused by a manufacturing defect . . . .  It was therefore appropriate for the district court to exclude his opinion."); *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013) ("Bajaj's testimony that his opinion as to 'economically material' information is based on 'economic logic' is simply a form of inadmissible ipse dixit.  The law is clear that mere ipse dixit is not appropriate expert testimony because it is not based on reliable methodology."); *Bocoum v. Daimler Trucks N. Am. LLC*, No. 17-CV-7636 (JP) (BCM), 2022 WL 902465, at *11 (S.D.N.Y. Mar. 28, 2022) (similar).

### 2.   Dr. Sugarman Followed His Own Methodology.

As to Dr. Sugarman's remaining opinions, defendants are incorrect in arguing that Dr. Sugarman failed to follow his own methodology, and their criticisms go to weight and not admissibility.   Defendants argue that Dr. Sugarman did not follow the first step of his methodology—determining the hazards posed by the cold pack—because Dr. Sugarman did not review the safety data sheet issued by the cold pack's manufacturer.  Sugarman Mot. *in Limine* 8; *see* Sugarman Depo. 40:17–22.  But as defendants recognize, Dr. Sugarman reviewed both the New Jersey Department of Health fact sheet for ammonium nitrate and the Thermo Fisher safety data sheet for ammonium nitrate.  Sugarman Mot. *in Limine* 8; *see* Sugarman Dec. 27, 2020 Report 1.  Based on the information in these documents, Dr. Sugarman concluded that the cold pack posed a risk of chemical burns.  Sugarman Dec. 27, 2020 Report 1–2.  The parties vigorously dispute which of these three documents is the best authority for evaluating the hazards posed by the cold pack, debating issues such as whether the manufacturer's safety data sheet refers to pure ammonium nitrate or a solution of ammonium nitrate and water.  *See* Sugarman Mot. *in Limine* 8–9; Opp'n to Sugarman Mot. *in Limine* 2–8; Mem. in Supp. of Pl.'s Cross-Mot. for Summ. J. 9 ("Pl.'s Mot.") (Dkt. #124); CVS's Reply in Supp. of Mot. for Summ. J. 9–10 ("CVS's Reply") (Dkt. #126).  But even if these issues are resolved uniformly in defendants' favor, it does not follow that Dr. Sugarman failed to follow his own methodology.  "To the extent Defendants have any questions about the weight or the sufficiency of the evidence upon which" Dr. Sugarman "relied, or the conclusions generated therefrom, those questions can be asked on cross-examination." *Discover Fin. Servs. v. Visa U.S.A., Inc.*, 582 F. Supp. 2d 501, 507 (S.D.N.Y. 2008); *see Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363, 369 (W.D.N.Y. 1999) ("[A]lleged weaknesses in the experts' methodologies will go to the weight to be given the expert testimony, not its admissibility."); *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14-CV-8467 (JMF), 2016

15

WL 5416498, at *10 (S.D.N.Y. Sept. 28, 2016) (objection that an expert "did not consider all relevant data" goes "to the weight of [the expert's] testimony, rather than to its admissibility").

Similarly unfounded is defendants' argument that Dr. Sugarman did not analyze the "probability of occurrence" as required in the second step of his methodology.  Sugarman Mot. *in Limine* 9.  Although Dr. Sugarman did not calculate a precise numerical probability, he acknowledged and explained that "the likelihood of a bag leaking is relatively low."  Sugarman Depo. 190:22–191:2; *see id*. at 169:16–17 ("[T]here is a risk, but in a risk analysis, that risk is very low."); *id*. at 58:12–15 (acknowledging that he was not "able to find any other similar incident[s] where a[n] instant cold pack packaging was breached").  Dr. Sugarman nevertheless concluded that the cold pack posed a chemical-burn hazard because the "severity of hitting the liquid where the liquid gets on your skin, is very high," and so there is "a high enough risk that that hazard needs to be ameliorated."  *Id*. at 190:21–191:6.  Defendants suggest that Dr. Sugarman's conclusion is untenable in light of the low probability of a leak, *see* Reply in Supp. of Sugarman Mot. *in Limine* 9 (Dkt. #118), but these are arguments as to weight, not admissibility.  *See Amorgianos*, 303 F.3d at 267 ("The judge should only exclude evidence if the flaw [in the expert's reasoning] is large enough that the expert lacks 'good grounds' for his or her conclusions.") (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (2d Cir. 1994)).  Because Dr. Sugarman followed his own methodology and defendants can challenge his conclusions on cross-examination, defendants' request to preclude Dr. Sugarman's testimony on this basis is denied.

### 3.  Dr. Sugarman's Opinion Rests on a Proper Foundation.

Defendants are also incorrect in arguing that Dr. Sugarman's opinions as to the cold pack's warnings lack a proper foundation.  Defendants do not challenge Dr. Sugarman's qualifications as an expert in human-factors engineering and physics.  *See* Sugarman Mot. *in Limine* 9–11.  Nor do

they challenge the reliability of Dr. Sugarman's methodology in analyzing the adequacy of the cold pack's warnings. *See ibid*. Instead, defendants argue that Dr. Sugarman's opinion lacks a proper foundation because (i) during his deposition, Dr. Sugarman could not cite any specific section of the OSHA Hazard Communications Standards supporting his statements, (ii) Dr. Sugarman did not physically inspect the cold pack that plaintiff used, and (iii) Dr. Sugarman did not propose any specific alternative warnings and did not know how "frequently" a user should check for leaks. *See ibid*. These arguments are unpersuasive.

First, it is unclear why it matters that Dr. Sugarman could not cite specific OSHA Hazard Communication Standards during his deposition. As defendants recognize, "OSHA Hazard Communication Standards apply to hazards of chemicals in the workplace, not to a label on a consumer product." Sugarman Mot. *in Limine* 10. To the extent that Dr. Sugarman "referred to OSHA Hazard Communication Standards" in his deposition but "could not provide any specific section of those Standards that supported his statements," *id.* at 9, defendants' criticism goes to the weight and not the admissibility of Dr. Sugarman's opinions. And to the extent that defendants are arguing that Dr. Sugarman's opinion lacks an adequate basis because the cold pack would not require a warning under OSHA Hazard Communication Standards, *see id*. at 10, this argument is unpersuasive. Dr. Sugarman based his opinion, in relevant part, on statements in the New Jersey Department of Health fact sheet for ammonium nitrate and the Thermo Fisher safety data sheet for ammonium nitrate. *See* Sugarman Dec. 27, 2020 Report 1–2. These documents caution against skin contact with ammonium nitrate, and they include first aid warnings to "[i]mmediately wash contaminated skin with large amounts of water" in the event that skin contact occurs. N.J. Dep't of Health Fact Sheet 1; *accord* Thermo Fisher Safety Data Sheet 1 ("Skin Contact: Wash off immediately with plenty of water for at least 15 minutes."). Based on this information,

Dr. Sugarman concluded that the cold pack poses a risk of causing chemical burns. *See* Sugarman Dec. 27, 2020 Report 2. Accordingly, the Court is not persuaded that Dr. Sugarman's opinion lacks a proper foundation, regardless of whether Dr. Sugarman was unable to cite specific OSHA Hazard Communication Standards supporting his conclusion that a warning was required.

Second, it makes no difference that Dr. Sugarman did not physically inspect the specific cold pack that resulted in plaintiff's injury. Dr. Sugarman testified that he "looked at photographs" of the cold pack that plaintiff used and "then [he] bought some on [his] own so [he] could actually have it and see what it is like." Sugarman Depo. 130:3–9. In arguing that Dr. Sugarman's opinion should nevertheless be precluded, defendants' reliance on *Valente v. Textron, Inc.*, 931 F. Supp. 2d 409 (E.D.N.Y. 2013), is misplaced. *See* Sugarman Mot. *in Limine* 10–11; Reply in Supp. of Sugarman Mot. *in Limine* 6. Unlike Dr. Sugarman, the expert in *Valente* was not qualified in the area in which his testimony was offered, did not examine the challenged product or any exemplary products, provided no analysis or reasoning for his conclusions, and could not recall what warnings the challenged product included. *See* 931 F. Supp. 2d at 429–31. Indeed, the party that sought to introduce the expert's testimony "concede[d] that there is no scientific methodology or theory underlying [the expert's] opinions." *Id.* at 432 n.20. There is no basis for concluding that Dr. Sugarman's testimony should be precluded for the reasons given in *Valente*.

Finally, there is no requirement under New York law that an expert offer specific alternative warnings. *See Saladino v. Am. Airlines, Inc.*, 500 F. App'x 69, 72–73 (2d Cir. 2012) (finding "without merit" the argument that "plaintiffs were required to present 'expert proof regarding the . . . actual content . . . of a proposed warning'"). Accordingly, Dr. Sugarman is not precluded from testifying that the cold pack should have contained a chemical-burn warning and that it should have instructed users to check "frequently" or "periodically" for leaks.

### B.    Steven Hall

Plaintiff's motion to exclude the testimony of Steven Hall is denied.  Plaintiff argues that Mr. Hall's opinions "are based upon [two] foundational factual assertions that are inaccurate, false, and misleading."  Mem. in Supp. of Mot. to Exclude Mr. Hall's Testimony 4 ("Hall Mot. *in Limine*") (Dkt. #133-1).  But as explained below, plaintiff's criticisms go to the weight, and not the admissibility, of Mr. Hall's opinions.

First, plaintiff contends that Mr. Hall erred in concluding that the manufacturer's safety data sheet describes the cold pack's contents in their "solution" form.  *Id*. at 2.  According to plaintiff, the manufacturer's safety data sheet describes "hazards as presented by ammonium nitrate in its solid, dry chemical form," and so the manufacturer's safety data sheet is "no more 'relevant' to the issue of what hazards are presented by that product than the [safety data sheet] for ammonium nitrate issued by the New Jersey Department of Health, since what both are actually describing . . . [is] the skin hazards presented by ammonium nitrate in its solid form."  *Id*. at 2–3 (emphasis omitted).  But even assuming that plaintiff is correct, his criticism goes only to the weight of Mr. Hall's opinions.  *See, e.g.*, *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010) ("Unless the information or assumptions that [a party's] experts relied on were 'so unrealistic and contradictory as to suggest bad faith,' inaccuracies in the underlying assumptions or facts do not generally render an expert's testimony inadmissible.") (quoting *Zerega*, 571 F.3d at 214); *Junger v. Singh*, 393 F. Supp. 3d 313, 328 (W.D.N.Y. 2019) (explaining that inaccurate factual assumptions "typically go to the weight, and not the admissibility, of the opinions"); *Salahuddin v. United States*, 564 F. Supp. 3d 75, 85 (E.D.N.Y. 2021) ("At most, plaintiff's attacks on the factual basis for [an expert's] testimony go to its weight, not its admissibility."); *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 459 (E.D.N.Y. 2011) ("[M]ere weakness in the

factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.").

Second, plaintiff argues that Mr. Hall erroneously concluded that it would be "'incorrect and misleading' for the cold pack to warn of a chemical burn."  Hall Mot. *in Limine* 3; *see* Hall Apr. 29, 2021 Report 12.  Plaintiff reasons that "in reality, such a warning would be entirely consistent with the Cold Pack's own [safety data sheet]" because "the [safety data sheet] for the Cold Pack actually warns that contact with the contents of the Cold Pack could cause 'burning and skin damage.'"  Hall Mot. *in Limine* 3–4.  Defendants respond that the phrase "burning and skin damage" refers "to a burning sensation, not chemical burns," because it "appears together with 'redness' and 'itching' and is followed by a statement that no harmful effects have been reported from skin absorption."  Opp'n to Mot. to Exclude Mr. Hall's Testimony 3 (Dkt. #134).  While the parties read the Cold Pack's safety data sheet differently, plaintiff has not shown such a great "analytical gap between the data and the opinion proffered" as to warrant preclusion of Mr. Hall's testimony. *Joiner*, 522 U.S. at 146.  Plaintiff's "arguments that an expert's conclusions are wrong, 'go to the weight of the evidence, not to its admissibility.'" *M.B. ex rel Scott v. CSX Transp., Inc.*, 130 F. Supp. 3d 654, 665 (N.D.N.Y. 2015) (quoting *Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir. 2001)).

Plaintiff's motion to exclude Mr. Hall's testimony is therefore denied.

### C.   Harold Ehrlich

Plaintiff's motion to exclude the testimony of Harold Ehrlich is denied.  Plaintiff criticizes Mr. Ehrlich's opinion for two principal reasons.  First, Mr. Ehrlich allegedly did not review any safety data sheets before offering his opinion.  Second, Mr. Ehrlich allegedly did not explain how the cold pack's warnings disclose the specific nature of the hazard presented or how those warnings could have prevented plaintiff's injury.  Mem. in Supp. of Mot. to Exclude Mr. Ehrlich's

20

Testimony 2–5 ("Ehrlich Mot. *in Limine*") (Dkt. #130-1).   These criticisms do not warrant exclusion.

First, it is unclear whether plaintiff is correct that Mr. Ehrlich failed to review any safety data sheets.  Mr. Ehrlich explained that he reviewed the "response[s] to codefendant's first request for production of documents" as well as "various correspondence between parties provided in discovery."  Ehrlich Feb. 24, 2021 Report 1 (capitalization altered); *see* Decl. of Harold Ehrlich ¶ 4 (Dkt. #131-1).  Defendants assert that the safety data sheets "were provided in discovery and reviewed by Ehrlich."  Opp'n to Mot. to Exclude Mr. Ehrlich's Testimony 1 (Dkt. #131).  Plaintiff argues that Mr. Ehrlich did not specifically state that he reviewed any safety data sheets, but plaintiff has not challenged defendants' assertion that the safety data sheets were included in the discovery-related documents that Mr. Ehrlich reviewed.  *See* Reply in Supp. of Ehrlich Mot. *in Limine* 4 (Dkt. #132).

In any event, even assuming that Mr. Ehrlich failed to review any safety data sheets, exclusion is not warranted on this basis.  Plaintiff suggests that Mr. Ehrlich could not reliably opine on the adequacy of the cold pack's warnings without evaluating the degree of hazards posed by the cold pack, and argues that the only way to evaluate the cold pack's hazards is to examine safety data sheets.  *See* Ehrlich Mot. *in Limine* 2.  But Mr. Ehrlich could have assessed the cold pack's hazards through other information he reviewed, such as Dr. Sugarman's expert report, photographs of plaintiff's injury, plaintiff's deposition testimony, and other documents produced in discovery.  *See* Ehrlich Feb. 24, 2021 Report 1.  Plaintiff is therefore incorrect in arguing that Dr. Ehrlich's opinion is divorced from "the actual facts of the case."  Ehrlich Mot. *in Limine* 2.  And for substantially the same reasons that Dr. Sugarman is not precluded from testifying because he failed to review the manufacturer's safety data sheets, *see* pp. 15–16, *supra*, Mr. Ehrlich is not precluded

21

from testifying here.  *See Chefs Diet Acquisition Corp*, 2016 WL 5416498, at *10 (stating that an objection that an expert "did not consider all relevant data" goes "to the weight of [the expert's] testimony, rather than to its admissibility").

Second, plaintiff's criticism of Mr. Ehrlich's opinion regarding the adequacy of the cold pack's warnings is nothing more than a critique of Mr. Ehrlich's conclusion.  Plaintiff argues that Mr. Ehrlich "never explains how the Cold Pack discloses the specific nature of the chemical burn hazard it presents," Ehrlich Mot. *in Limine* 2 (emphasis omitted), but Mr. Ehrlich explained that the cold pack warns against "serious injuries" and "burns," Ehrlich Feb. 24, 2021 Report 5. Likewise, plaintiff argues that Mr. Ehrlich "never explains how the warning on the Cold Pack" could have prevented plaintiff's injury "without a warning to 'check periodically for leaks,' or words to that effect," Ehrlich Mot. *in Limine* 2 (emphasis omitted), but Mr. Ehrlich explained that "the instructions specifically state to remove the cold pack if the skin feels too cold or if you feel uncomfortable," Ehrlich Feb. 24, 2021 Report 7.  Exclusion is not warranted simply because the parties disagree over whether these warnings are adequate.  *See M.B. ex rel Scott*, 130 F. Supp. 3d at 665 ("[A]rguments that an expert's conclusions are wrong, 'go to the weight of the evidence, not to its admissibility.'") (quoting *Campbell*, 239 F.3d at 186).

Finally, plaintiff argues in reply that Mr. Ehrlich erroneously assumed that the cold pack's safety data sheet describes the cold pack's contents in a solution form.  *See* Reply in Supp. of Ehrlich Mot. *in Limine* 1–3.  This argument fails for the same reasons discussed with respect to Mr. Hall, *see* pp. 19–20, *supra*, and also because plaintiff did not raise it in his initial motion, *see Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) ("[N]ew arguments may not be made in a reply brief.").  Moreover, this argument is inconsistent with plaintiff's assertion that Mr. Ehrlich did not review any safety data sheets.  *See* Ehrlich Mot. *in Limine* 1.

### D.     Dr. Michael Weinberger

Defendants' motion to exclude the testimony of Dr. Weinberger is denied.  Defendants raise two arguments in support of this motion.  First, they contend that Dr. Weinberger's opinions should be excluded because plaintiff did not comply with Federal Rule of Civil Procedure 26(a)(2)(B)'s disclosure requirements.  Second, they argue that Dr. Weinberger's opinion is inadmissible because he did not provide the necessary foundation for his opinions.  Mem. in Supp. of Mot. to Exclude Dr. Weinberger's Testimony 2–5 ("Weinberger Mot. *in Limine*") (Dkt. #112).  These arguments are unpersuasive.

Federal Rule of Civil Procedure 26(a)(2)(B) generally requires expert testimony to be accompanied by a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," "a list of all other cases in which . . . the witness testified as an expert at trial or by deposition," and "a statement of the compensation to be paid for the study and testimony in the case."  Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii), (v)–(vi); *see Caruso v. Bon Secours Charity Health Sys., Inc.*, 703 F. App'x 31, 33 (2d Cir. 2017).  "If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "Although the language of [Rule] 37(c)(1) 'is written in mandatory terms,' . . . '[t]he imposition of sanctions for abuse of discovery under [Rule] 37 is a matter within the discretion of the trial court.'"  *Hein v. Cuprum, S.A., De C.V.*, 53 F. App'x 134, 136 (2d Cir. 2002) (citations omitted).  In deciding whether to exclude testimony under Rule 37(c)(1), the Court considers "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility

of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (alterations in original) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)).  "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988).

Exclusion is not warranted here.  Plaintiff concedes that he did not timely comply with Rule 26(a)(2)(B)'s disclosure requirements, *see* Opp'n to Mot. to Exclude Dr. Weinberger Testimony 7 (Dkt. #113), but plaintiff corrected this deficiency by serving defendants with the required information in November 2021, *see* Pl.'s Nov. 8, 2021 Supp. Disclosures.  Plaintiff has not explained the reason for the untimely disclosure, but the record contains no indication that plaintiff acted in bad faith or willfully.  *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) ("[Bad faith] can be taken into account as part of the party's explanation for its failure to comply.").  And while it is unclear how important Dr. Weinberger's testimony is to plaintiff's case, any prejudice to defendants is minimal because trial is not yet scheduled and defendants may move to reopen discovery "to depose Dr. Weinberger" or "to retain a rebuttal pain management specialist."  Reply in Supp. of Weinberger Mot. *in Limine* 2 (Dkt. #114); *see, e.g.*, *Barnett v. Conn. Light & Power Co.*, No. 11-CV-1037 (VLB), 2013 WL 1196669, at *2 (D. Conn. Mar. 25, 2013) ("[N]o trial date has been scheduled [and] there is a possibility of continuance.  Since continuance is possible, the Defendants may move to reopen expert discovery and would have good cause to do so which would mitigate any prejudice suffered by having to prepare to meet [an expert's] new testimony."); *Hunter v. City of New York*, No. 12-CV-6139 (MKB) (RML), 2019 WL 3752777, at *3 (E.D.N.Y. Aug. 8, 2019) (finding "that exclusion is too harsh a remedy under the circumstances" in part because "no trial date has been set").

24

As to defendants' second argument, I conclude that Dr. Weinberger provided an adequate foundation for his conclusions. That foundation includes an independent medical examination; a description of the cold-pack incident and its immediate effect on plaintiff's arm; plaintiff's subjective complaints and treatment history; and a paper published in Pain Medicine regarding "[b]urn-induced damage to cutaneous nociceptors and their superficial conducting fibers." Weinberger Nov. 8, 2021 Report 1; Weinberger Aug. 11, 2021 Report 1–2. And while defendants argue that Dr. Weinberger's "normal physical examination" undercuts his opinion that plaintiff's "[p]ain is consistent with neuropathic pain from injury to cutaneous nerve fibers," Weinberger Mot. *in Limine* 2, 4 (quoting Weinberger Aug. 11, 2021 Report 2), this argument goes, you guessed it, to the weight rather than the admissibility of Dr. Weinberger's opinion, *see M.B. ex rel Scott*, 130 F. Supp. 3d at 665 ("[A]rguments that an expert's conclusions are wrong, 'go to the weight of the evidence, not to its admissibility.'") (quoting *Campbell*, 239 F.3d at 186).

\* \* \*

For the foregoing reasons, defendants' motion to exclude Dr. Sugarman's testimony is granted in part. Dr. Sugarman is precluded from testifying that the cold pack's leak was caused by a manufacturing defect. The motions to exclude expert testimony are otherwise denied.

## II. Cross-Motions for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant. *See ibid.*

25

A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Because a rational trier of fact could find for either party on plaintiff's claims, the cross-motions for summary judgment are denied.

### A. Manufacturing Defect

Defendants' motions for summary judgment are denied as to plaintiff's manufacturing-defect claim. Under New York law, a manufacturing defect exists "when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm." *McCarthy v. Olin Corp.*, 119 F.3d 148, 154 (2d Cir. 1997) (citing *Victorson v. Bock Laundry Mach. Co.*, 335 N.E.2d 275 (N.Y. 1975)). To establish a manufacturing defect, "the plaintiff must show that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,' and that the defect was the cause of plaintiff's injury." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (quoting *Caprara v. Chrysler Corp.*, 417 N.E.2d 545, 552–53 (N.Y. 1981)). "A manufacturing defect can be demonstrated either through evidence identifying a specific flaw, or through reliance on circumstantial evidence." *Z.C. v. Wal-Mart Stores, Inc.*, 574 F. App'x 52, 54 (2d Cir. 2014) (citing *Speller v. Sears, Roebuck & Co.*, 790 N.E.2d 252, 255 (N.Y. 2003)). "[I]n the absence of evidence identifying a specific flaw, a plaintiff must prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants." *Riegel*, 451 F.3d at 125 (quoting *Speller*, 790 N.E.2d at 254–55). If a plaintiff makes this showing, "[t]he burden then shifts to the defendant to propose an alternative explanation for the harm, one that does *not* implicate a product defect." *Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, 419 F. Supp. 3d 490, 511 (E.D.N.Y. 2019) (collecting cases); *see*

26

*LaBarge v. Joslyn Clark Controls, Inc.*, No. 03-CV-169S, 2006 WL 2795612 (WMS), at *7 (W.D.N.Y. Sept. 26, 2006) ("If a plaintiff meets these two requirements, the burden shifts to the defendant to present evidence that the accident was not necessarily attributable to a defect in its product."), *aff'd* 242 F. App'x 780 (2d Cir. 2007).

Plaintiff has adequately carried his initial burden.  There is no dispute that the cold pack did not perform as intended, because it leaked and burned plaintiff's arm.  Pl.'s 56.1 Statement ¶ 10; CVS's 56.1 Statement ¶¶ 5–6.  And viewing the facts in the light most favorable to plaintiff, a reasonable jury could infer that the leak must have resulted from a manufacturing defect. Plaintiff testified that he purchased the cold pack and stored it in a medicine cabinet in his bathroom.  Sokolovic Depo. 47:19–25.  The following week, plaintiff removed the cold pack, "took [it] out of the box," and observed that "it was in good shape."  *Id*. at 49:2; 62:6–8; 171:10– 25.  Plaintiff then activated the cold pack "precisely as users are instructed to do by the language on the package."  Pl.'s 56.1 Statement ¶ 13.  The cold pack then leaked, causing plaintiff's injury. *Id*. at ¶¶ 8–9.  The record contains no indication that the cold pack was damaged after it was purchased by plaintiff, and so a reasonable jury could conclude that plaintiff has "exclude[d] all other causes for the product's failure that are not attributable to defendants."  *Riegel*, 451 F.3d at 125; *see, e.g.*, *Bozick v. Conagra Foods, Inc.*, No. 19-CV-4045 (LJL), 2022 WL 4561779, at *35 (S.D.N.Y. Sept. 28, 2022) ("Plaintiff's eyewitness testimony about her conduct, if credited by a jury, is sufficient to raise a triable issue from which a 'reasonable jury could conclude that' she excluded 'all other causes of the fire.'") (citation omitted); *Florentino v. Am. Lifts*, No. 06-CV-3553 (BMC) (MDG), 2008 WL 11417177, at *8–9 (E.D.N.Y. Apr. 15, 2008) (holding that plaintiff's eyewitness account of how an accident occurred was sufficient "circumstantial evidence [to] give[] rise to an inference that the accident could only have occurred due to some defect in the

27

product"); *Lynch v. Trek Bicycle Corp.*, No. 01-CV-3651 (DAB) (JCF), 2011 WL 1327032, at *4 (S.D.N.Y. Mar. 30, 2011) (same).

Defendants have not responded with evidence showing that the leak is attributable to something other than a manufacturing defect, and so the Court cannot conclude as a matter of law that defendants are entitled to summary judgment. *See Zsa Zsa Jewels*, 419 F. Supp. 3d at 511. The CVS defendants argue that "[i]t is as likely that the cold pack was punctured as it is that there was a manufacturing defect. There is no evidence in this case to make either possibility more likely than the other." CVS's Reply 13. But defendants cannot carry their burden "by merely establishing plaintiff's inability to come forward with evidence of any specific defect. Rather, defendant[s are] required to come forward with evidence in admissible form establishing that plaintiff's injuries were not caused by a manufacturing defect in the product." *Graham v. Walter S. Pratt & Sons Inc.*, 706 N.Y.S.2d 242, 243–44 (App. Div. 2000); *see, e.g.*, *Giordano v. PGT Indus., Inc.*, No. 4-CV-9246 (WCC), 2007 WL 4233002, at *5 (S.D.N.Y. Nov. 30, 2007) ("Defendants, who bear the burden at this stage, have not presented any evidence that the accident could have been caused by something not attributable to themselves. Therefore, plaintiff has raised a question of material fact, precluding summary judgment."); *Florentino*, 2008 WL 11417177, at *9 ("[P]laintiff has offered circumstantial evidence based on which a jury could determine that the harm plaintiff sustained was caused by a product defect, and defendant has offered no alternative cause for the failure supported by admissible evidence. Summary judgment is therefore precluded."). And while the CVS defendants speculate that plaintiff's wife or children may have mishandled the cold pack, *see* CVS's 56.1 Statement ¶ 46, the record contains no evidence suggesting that the leak is attributable to plaintiff's wife or children. And in any event, a

reasonable jury could conclude that plaintiff has excluded this possibility based on his testimony that the cold pack remained in its box until use. *See* Sokolovic Depo. 49:2, 62:6–8.

Accordingly, summary judgment is denied as to plaintiff's manufacturing-defect claim.

## B.      Failure to Warn

Summary judgment is denied to all parties on plaintiff's failure-to-warn claim. To prevail on a failure-to-warn claim, a plaintiff "must show (1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of harm." *Colon*, 199 F. Supp. 2d at 84.

Defendants make three principal arguments in support of summary judgment. First, they contend that the cold pack did not pose a reasonably foreseeable danger of causing a chemical burn. Second, they argue that the cold pack adequately warns against the dangers of a chemical burn, and so an additional warning was unnecessary. Finally, they assert that the alleged failure to warn did not cause plaintiff's injury. *See* CVS Mem. in Supp. of Mot. for Summ. J. 19–22 ("CVS's Mot.") (Dkt. #123); Briggs Mem. in Supp. of Mot. for Summ. J. 15–18 ("Briggs' Mot.") (Dkt. #111-3). Plaintiff disagrees and argues that he is entitled to partial summary judgment on this claim. *See* Pl.'s Mot. 17–29. As explained below, there are genuine disputes of fact as to each of these issues, and so summary judgment is denied to all parties.

### 1.   There Is a Genuine Factual Dispute as to Whether the Cold Pack Posed a Foreseeable Risk of Danger.

The Court cannot resolve as a matter of law whether the cold pack posed a sufficiently foreseeable risk of danger to trigger defendants' duty to warn. "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 81 (2d Cir. 2006) (quoting *Liriano v. Hobart Corp.*, 700 N.E.2d 303, 305 (N.Y. 1998)). "There are several ways that a plaintiff can

demonstrate that a manufacturer knew or should have known that its product could cause a specific injury." *De La Cruz v. Ecolab Inc.*, No. 18-CV-6983 (GHW), 2020 WL 247885, at *4 (S.D.N.Y. Jan. 16, 2020). For example, to "show that [a manufacturer] either knew or should have known about a risk of chemical burns," a plaintiff could identify "a relevant medical study or presentation that was known to the manufacturer," "filed cases or public news reports regarding similar incidents," or "[t]he results of the manufacturer's product testing." *Ibid.*; *see Billiar v. Minn. Min. & Mfg. Co.*, 623 F.2d 240, 242, 246 (2d Cir. 1980) (considering a chemical's safety data sheet in determining whether a manufacturer had reason to foresee that its product could cause chemical burns).

Here, the parties present competing factual theories. Plaintiff argues that defendants knew or should have known that the cold pack posed a reasonably foreseeable risk of chemical burns based principally on:

- the New Jersey Department of Health fact sheet on ammonium nitrate, which states that ammonium nitrate "can irritate and burn the skin and eyes," and provides a first aid warning to "[q]uickly remove contaminated clothing" and "[i]mmediately wash contaminated skin with large amounts of water" in the event of skin contact, N.J. Dep't of Health Fact Sheet 1;

- the Thermo Fisher safety data sheet on ammonium nitrate, which includes a warning to "[w]ash off immediately with plenty of water for at least 15 minutes" in the event of skin contact and to "[g]et medical attention if symptoms occur," Thermo Fisher Safety Data Sheet 2;

- Dr. Sugarman's testimony that the "chemical hazard" of ammonium nitrate is "very clear," and so defendants "knew or should have known" that a leak could result in a "serious skin burn," Sugarman Dec. 27, 2020 Report 2–3;

- plaintiff's suffering a second-degree burn as a result of the cold pack leaking; and

- the cold pack's safety data sheet, which warns of possible "burning and skin damage," Cold Pack Safety Data Sheet 1.

*See* Pl.'s Mot. 5–8, 19–24. Defendants contend that other evidence suggests that the cold pack's contents did not pose a reasonably foreseeable risk of chemical burns. This evidence includes:

- the cold pack's safety data sheet describing its ingredients as a "[s]kin irritant," Cold Pack Safety Data Sheet 1, which, according to defendants, does not trigger a duty to warn under OSHA Hazard Communication Standards because a warning is required only for "corrosive substances," CVS's Mot. 11;

- the cold pack's safety data sheet's warning that "[c]ontact may cause redness, itching, burning and skin damage," which in context refers to a "burning sensation," Cold Pack Safety Data Sheet 1;

- Mr. Hall's opinion that "[t]he properties of the solution as indicated in the [manufacturer's safety data sheet] do not warrant a warning regarding 'skin burns' as this term is indicative of a risk of permanent skin damage" and appropriate only for corrosive substances, Steven Hall Apr. 29, 2021 Report 12;

- the fact that other cold packs do not include a "chemical burn" warning, and

- the absence of evidence of "any prior similar incidents" involving the CVS Instant Cold Pain Relief Pack, *see* CVS's 56.1 Statement ¶ 78.

*See* CVS's Mot. 19–22; Briggs' Mot. 15–17; CVS's Reply 7–8.

Summary judgment is inappropriate on this record.  Viewing the facts in the light most favorable to plaintiff, a reasonable jury could conclude that defendants knew or had reason to know that the cold pack posed a danger of chemical burns.  The New Jersey Department of Health fact sheet and the Thermo Fisher safety data sheet specifically include first-aid warnings to "[i]mmediately wash contaminated skin with large amounts of water" and that ammonium nitrate can "burn the skin," N.J. Dep't of Health Fact Sheet 1; Thermo Fisher Safety Data Sheet 1, and a reasonable jury could credit Dr. Sugarman's opinion that ammonium nitrate poses a "very clear" hazard of chemical burns, Sugarman Dec. 27, 2020 Report 2.  Likewise, viewing the facts in the light most favorable to defendants, a reasonable jury could conclude that the cold pack posed only a foreseeable risk of causing a "burning sensation," similar to "redness" or "itching," Yim Decl. 21; *see* CVS Reply 8; Briggs Reply 8, and that the manufacturer therefore had no duty to include a warning about chemical burns.

31

This conclusion is not affected by the parties' challenges to their adversaries' evidence. For example, plaintiff repeatedly argues that the cold pack's safety data sheet describes the hazards posed by ammonium nitrate in its solid form, before the cold pack is activated.  *See* Pl.'s Mot. 1, 5–7, 13; Pl.'s Reply in Supp. of Cross-Mot. for Summ. J. 1–5 (Dkt. #129); Hall Mot. *in Limine* 1–3; Reply in Supp. of Hall Mot. *in Limine* 2–3; Reply in Supp. of Ehrlich Mot. *in Limine* 1–6.  But even if plaintiff is correct on this point, a genuine dispute of fact still exists based on Mr. Hall's opinions as well as competing factual interpretations over the phrase "redness, itching, burning and skin damage" in the cold pack's safety data sheet, among other things.  Cold Pack Safety Data Sheet 1.  Likewise, a reasonable jury could conclude that the cold pack posed a foreseeable risk of chemical burns based on the first aid warnings in the New Jersey Department of Health fact sheet and the Thermo Fisher safety data sheet, regardless of whether ammonium nitrate is classified as a skin irritant or a corrosive substance under OSHA Hazard Communication Standards.  And although defendants argue that the cold pack has not caused similar chemical-burn injuries, *see* CVS Reply 7–8, the Second Circuit has stated that "[i]f the injury is reasonably foreseeable . . . even if rare, the seller cannot rely on its history of good fortune to exempt itself from liability." *Billiar*, 623 F.2d at 246.

### 2. There Is a Genuine Dispute of Fact as to Whether the Cold Pack Included Adequate Warnings.

There is also a genuine dispute of fact as to whether the cold pack adequately warned against the dangers of a chemical burn.  A warning "may be held adequate as a matter of law" if it "is 'accurate, clear, consistent on its face, and . . . portrays with sufficient intensity the risk involved.'"  *Kandt v. TASER Intern., Inc.*, 527 F. App'x 51, 53 (2d Cir. 2013) (ellipses in original) (quoting *Martin v. Hacker*, 628 N.E.2d 1308, 1312 (N.Y. 1993)).  But "[t]he adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily

32

susceptible to the drastic remedy of summary judgment." *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997) (citation omitted); *see Billiar*, 623 F.2d at 246 ("To our knowledge, no case applying New York law has held a warning adequate as a matter of law."); *W.S.R. by and through Richardson v. FCA US, LLC*, No. 18-CV-6961 (KMK), 2022 WL 4648403, at *22 (S.D.N.Y. Sept. 30, 2022) ("It is not the Court's role at summary judgment to determine whether warnings were adequate, or whether the failure to include a single warning is enough in the face of other warnings.").

Defendants contend that the cold pack's warnings were adequate as a matter of law. They emphasize that the cold pack warned users: (i) "Failure to follow instructions or warnings could result in serious injuries such as frostbite"; (ii) "Remove cold pack if skin feels too cold or if you feel uncomfortable"; (iii) "Extreme cold can cause frostbite or burns. Use with towel or other insulating material"; (iv) "Do not use for more than 10–15 minutes in the same location"; and (v) "If solution contacts eyes, skin or open wounds, flush liberally with water. If solution is swallowed, give one or two glasses of milk or water and induce vomiting. Contact poison control immediately." CVS's Mot. 19–22; Briggs' Mot. 15–17; *see* Cold Pack Pictures 2.

The adequacy of these warnings is a factual question that the Court cannot resolve on summary judgment. Viewing the facts in the light most favorable to plaintiff, a reasonable jury could conclude that the warnings fail to adequately convey a risk of chemical burns. For example, the frostbite warning might suggest that a user should not fall asleep while using the cold pack, but it does not necessarily suggest that chemical burns could result if the cold pack leaks. Similarly, the warning to flush skin with water does not necessarily "inform [users] of the severity of the injury [they] could receive from skin contact" with the solution. *Billiar*, 623 F.2d at 244. Moreover, a reasonable jury could credit Dr. Sugarman's opinion that the cold pack "fail[ed] to

warn of the product's hidden dangers." Sugarman Dec. 27, 2020 Report 5. And while defendants argue that Dr. Sugarman's opinion should be excluded, *see* CVS's Mot. 20–21, the Court has already rejected that argument, *see* pp. 15–18, *supra*. And in any event, "[u]nder New York law, the jury does not need expert testimony to find a warning inadequate, but may use its own judgment considering all the circumstances." *Billiar*, 623 F.2d at 247; *see Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 744 (E.D.N.Y. 2016) (collecting cases). Accordingly, the Court cannot conclude that "the drastic remedy of summary judgment" is warranted. *Urena*, 114 F.3d at 366.

### 3. There Is a Genuine Dispute of Fact as to Causation.

There is a genuine dispute of fact as to whether the alleged failure to warn caused plaintiff's injury. To prevail on a failure-to-warn claim, "the plaintiff must show . . . that 'the failure to warn [was] a substantial cause of the events which produced the injury.'" *Burke v. Spartanics, Ltd.*, 252 F.3d 131, 139 (2d Cir. 2001) (citation omitted); *see id.* at 140 (stating that there is no liability where "the lack of a warning . . . was not a cause-in-fact of the accident"). Accordingly, "[a] court may . . . dismiss a failure to warn claim as a matter of law where the plaintiff cannot prove that the absence of warning proximately caused his injury." *Chica-Hernandez v. Italpresse U.S.A. Inc.*, No. 17-CV-6422 (KAM) (VMS), 2022 WL 768361, at *12 (E.D.N.Y. Mar. 13, 2022). Here, defendants argue that the alleged failure to warn did not cause plaintiff's injuries, both because plaintiff did not read the warning label and because plaintiff was already familiar with the alleged danger. *See* CVS's Mot. 21–22; Briggs' Mot. 16–17. But as explained below, there is a genuine dispute of fact as to the former and no evidence of the latter.

"In New York, there is a presumption that a user would have heeded warnings if they had been provided, and that the injury would not have occurred." *Colon*, 199 F. Supp. 2d at 85; *see Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 441 (S.D.N.Y. 1999). "The presumption can be rebutted by proof that an adequate warning would have been futile since plaintiff would not have

read it.  However, it is the manufacturer who has the burden of proving that, even if adequately warned, the plaintiff would not have read the warnings and his behavior would have been unchanged.  Summary judgment is appropriate only when that burden has been met to the level of negating the existence of a genuine factual issue." *Anderson*, 76 F. Supp. 2d at 441–42 (internal citation omitted).

There is a genuine dispute of fact as to whether plaintiff read the cold pack's warnings. Plaintiff testified at one point during his deposition that he did not read the instructions before using the cold pack.  Specifically, he testified:

> Q: On July 15th, did you read the instructions on the box or on the cold pack or did you already know how to use the cold pack?
>
> A: I would say I already knew how to use it.
>
> Q: It's fair to say you probably did not read the instructions?
>
> A: I didn't look at the instructions.

Sokolovic Depo. 59:4–13.  But later in the deposition, plaintiff's counsel refreshed plaintiff's recollection with a transcript of plaintiff's deposition testimony in an unrelated matter, after which plaintiff stated that he "briefly look[ed]" at the warnings.  *Id*. at 170:3–12; *see id*. at 170:15–16 ("I know I looked at them.").  Resolution of this inconsistency "is a matter for the jury, not for the Court on summary judgment."  *Alvarado v. GC Dealer Servs. Inc.*, 511 F. Supp. 3d 321, 338 n.9 (E.D.N.Y. 2021) (collecting cases).  And while defendants argue that the Court should not consider plaintiff's latter testimony because plaintiff's recollection was improperly refreshed, *see* CVS's Mot. 21 n.9, the Federal Rules of Civil Procedure require only that evidence "be capable of presentation in admissible form at the time of trial; [they do] not require that the materials be presented in an admissible form on summary judgment."  *Gordon v. Kalaeda Health*, 299 F.R.D. 380, 393 (W.D.N.Y. 2014); *see* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material

cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").  And because plaintiff's testimony "from a prior proceeding . . . could conceivably be reproduced at trial since [plaintiff] could testify at a trial of this matter consistently in the same way [he] testified" previously, the alleged errors do "not preclude [plaintiff's] testimony from being considered by the Court on a motion for summary judgment." *Ava Realty Ithaca, LLC v. Griffin*, No. 19-CV-123 (DNH) (TWD), 2021 WL 3848478, at *4 (N.D.N.Y. Aug. 26, 2021).

Further, defendants are not entitled to summary judgment based on their argument that plaintiff had actual knowledge of the cold pack's danger.  In general, "[w]hen the user is fully aware of the nature of the product and its dangers, . . . the supplier cannot be held liable for failure to warn him." *Billiar*, 623 F.2d at 243.  "The rationale for this 'knowledgeable user' exception is that knowledge of the danger is equivalent to prior notice; no one needs notice of that which he already knows." *Ibid.* (citation omitted); *see Liriano*, 700 N.E.2d at 308 ("[W]hen a warning would have added nothing to the user's appreciation of the danger, no duty to warn exists as no benefit would be gained by requiring a warning.").  "Thus, in appropriate cases, courts could as a matter of law decide that a manufacturer's warning would have been superfluous given an injured party's actual knowledge of the specific hazard that caused the injury." *Liriano*, 700 N.E.2d at 308.  "Nevertheless, in cases where reasonable minds might disagree as to the extent of plaintiff's knowledge of the hazard, the question is one for the jury." *Ibid.*

Here, there is no indication that plaintiff had actual knowledge of the specific danger posed by the cold pack.  Defendants argue that plaintiff was "an experienced health care professional"

who "had used cold packs in his line of work" on multiple occasions.  CVS's Mot. 21; *accord* Briggs' Mot. 16 (arguing that plaintiff "was thoroughly familiar with [the cold pack] and had used [it] 20 previous times).  But there is no evidence that injury resulted from any of these uses, and so it does not follow that plaintiff had actual knowledge of the cold pack's danger.  *See Billiar*, 623 F.2d at 244–46 (holding that a plaintiff who "had experienced the toxic effects of [a product] on prior occasions and had received medical attention for it" did not necessarily know "that contact with the product could cause severe chemical burns" because she "had never been similarly injured before").  And although defendants argue that plaintiff was familiar with ammonium nitrate and knew that ammonium nitrate "is an irritant to the skin," CVS's Mot. 7; *see* CVS's 56.1 Statement ¶¶ 94–95 (citing Sokolovic Depo. 49:6–20), the cited testimony relates to plaintiff's knowledge at the time of the deposition, not at the time when the injury occurred, *see* Sokolovic Depo. 49:6–20; 143:7–11 ("I only researched the chemical after I was injured.").

### C.    Negligence

Summary judgment is denied as to plaintiff's negligence claim for the same reasons.  "Under New York law, the elements of negligence claims based on design defect, manufacturing defect, and failure to warn theories are the same as those under strict liability."  *Miccio v. Conagra Foods, Inc.*, 224 F. Supp. 3d 200, 208 (W.D.N.Y. 2016); *see Candelaria v. Conopco, Inc.*, No. 21-CV-6760 (FB) (TAM), 2023 WL 2266047, at *2 (E.D.N.Y. Feb. 28, 2023) (collecting cases).

### D.    Breach of Implied Warranty

Summary judgment is denied as to plaintiff's claim for breach of the implied warranty of merchantability.  A breach of the implied warranty of merchantability occurs when a product is sold that is not "fit for the ordinary purposes for which such goods are used."  N.Y. U.C.C. § 2-314(2)(c); *see Denny v. Ford Motor Co.*, 662 N.E.2d 730, 736 (N.Y. 1995).  "To state a claim for breach of the implied warranty of merchantability, a plaintiff must show, as she would for strict

products liability or negligence claims, that: (1) the product was defectively designed or manufactured; (2) the defect existed when the manufacturer delivered it to the purchaser or user; and (3) the defect was the proximate cause of the injury." *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123, 133 (N.D.N.Y. 2022) (citation omitted). Because there is a genuine dispute of fact as to whether the cold pack was defectively manufactured, *see* pp. 26–29, *supra*, summary judgment is denied as to the implied-warranty claim.

Defendants raise two counterarguments, neither of which is persuasive. First, defendants argue that the implied-warranty claim should be dismissed as duplicative of plaintiff's products-liability claims. *See* CVS's Mot. 23. But the New York Court of Appeals has held "that in a products liability case a cause of action for strict liability is not identical to a claim for breach of warranty" and "that a strict liability claim is not per se broader than a breach of warranty claim such that the former encompasses the latter." *Castro v. QVC Network, Inc.*, 139 F.3d 114, 117–18 (2d Cir. 1998) (citing *Denny*, 662 N.E.2d at 731). "By simply asserting that the claims are redundant with no more detailed argument, Defendants have not demonstrated that they are entitled to summary judgment on this claim." *Monell v. Scooter Store, Ltd.*, 895 F. Supp. 398, 417 (N.D.N.Y. 2012); *Henry v. Rehab Plus Inc.*, 404 F. Supp. 2d 435, 444 (E.D.N.Y. 2005). Second, defendants argue that the implied-warranty claim fails because plaintiff has not shown that CVS Instant Cold Pain Relief Packs are unfit for the ordinary purposes for which they are used. *See* CVS's Mot. 23; Briggs' Mot. 17. But even if the cold packs are generally safe, summary judgment is inappropriate because there is a genuine dispute as to whether "the specific product that caused the plaintiff's injury was not manufactured as designed." *Berger v. Mazda Motor of Am., Inc.*, No. 16-CV-1835 (MKB) (CLP), 2019 WL 1428449, at *5 (E.D.N.Y. Mar. 30, 2019).

## CONCLUSION

The motion to preclude Dr. Sugarman's testimony is granted in part and denied in part. The motions to preclude expert testimony are otherwise denied, as are the cross-motions for summary judgment on plaintiff's claims.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: March 31, 2023
Brooklyn, New York