```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
FRANK SOKOLOVIC,

                        Plaintiff,

            v.                                               MEMORANDUM AND ORDER

CVS HEALTH; BRIGGS MEDICAL SERVICE              17-CV-6609 (RPK) (SJB)
COMPANY; SHANGHAI INTCO MEDICAL
SUPPLY CO., LTD d/b/a BASIC MEDICAL
INDUSTRIES, INC.; SHANGHAI INTCO
MEDICAL INDUSTRIES, INC., JOHN DOES
1–15; and ABC CORPORATIONS 1–10,

                        Defendants.
-----------------------------------------------------------x
```

RACHEL P. KOVNER, United States District Judge:

CVS Health and Mediheat, Inc. (the "CVS defendants") have moved for summary judgment on their claims for indemnification against Shanghai Intco Medical Supply Co., Ltd. d/b/a Basic Medical Industries, Inc., Shanghai Intco Medical Industries, Inc., and Healthsmart Medical Service Company d/b/a Briggs Healthcare (collectively the "Briggs defendants"). As explained below, the motion is granted.

## BACKGROUND

The facts in this section are taken from the parties' exhibits and their statements of fact filed in accordance with Local Rule 56.1, unless otherwise noted.

The CVS defendants and Briggs defendants are companies involved in the manufacture and distribution of CVS's Instant Cold Pain Relief Packs. CVS's Local Rule 56.1 Statement ¶ 18 ("CVS's 56.1 Statement") (Dkt. #123-1). Shanghai Intco Medical Supply Co., Ltd. d/b/a Basic Medical Industries, Inc. and Shanghai Intco Medical Industries, Inc. manufactures such packs, and sells them to Healthsmart Medical Service Company d/b/a Briggs Healthcare. *Id.* at ¶¶ 18–19.

1

Briggs Healthcare then sells the cold packs to MediHeat, Inc., which in turn sells them to CVS Health. *Id*. at ¶¶ 20–21.

This lawsuit involves claims by a plaintiff who alleges that he was injured when one such CVS Instant Cold Pain Relief Pack leaked on his arm. The suit includes claims under New York law for defective manufacturing, failure to warn of the cold pack's danger, breach of implied warranty, and negligence. Second Am. Compl. ¶¶ 15–29 (Dkt. #28); *see* Mem. in Opp'n to Mot. to Exclude Testimony of Robert C. Sugarman 14 (Dkt. #117) (withdrawing a design-defect claim).

After plaintiff filed suit, CVS tendered its defense and indemnity to MediHeat, which accepted the tender. CVS's 56.1 Statement ¶¶ 26–27. MediHeat then tendered its defense and indemnity to Briggs Healthcare, which refused to accept the tender. *See id.* at ¶¶ 28, 90–91.

The CVS defendants filed cross-claims against the Briggs defendants for (i) contribution, (ii) contractual indemnification and breach of contract, and (iii) common law indemnification. CVS Defs.' Answer to Second Am. Compl. with Crossclaims ¶¶ 1–20 (Dkt. #32). Specifically, the CVS defendants seek contractual indemnification against Briggs Healthcare, *see* CVS's Reply in Supp. of Mot. for Summ. J. 1 ("CVS's Reply") (Dkt. #126), and they seek common-law indemnification against all three Briggs defendants, *see* CVS's Mot. for Summ. J. 23 ("CVS's Mot.") (Dkt. #119). As to the contractual-indemnification claim, the CVS defendants invoke an indemnification agreement that provides that "Briggs shall indemnify, defend and hold MediHeat harmless from and against any liability, obligation, judgment, cost or expense (including reasonable attorney's fees) whatsoever arising by reason of or with respect to . . . any claim of bodily injury or death by a use of any [CVS Instant Cold Pain Relief Pack]." CVS's 56.1 Statement ¶ 22; *see* Decl. of Yelena Graves, Ex. F(1) 2 ("Briggs Agreement") (Dkt. #123-9(1)).

2

The CVS defendants have now moved for summary judgment on their indemnification cross-claims . *See* CVS's Mot.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid*. The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In assessing the record, courts consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers[.]" Fed. R. Civ. P. 56(c)(1)(A). Courts view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citation, quotation marks, and alterations omitted).

## DISCUSSION

The CVS defendants' motion for summary judgment on their indemnification claims is granted.

3

### I. Contractual Indemnification

The CVS defendants' motion for summary judgment is granted as to their contractual indemnification claim against Briggs Healthcare. *See* CVS's Mot. 14–16. Contractual indemnification, as its name suggests, "is ultimately a question of contract interpretation." *Sompo Japan Ins. Co. of Am. v. Norfolk Southern Ry. Co.*, 762 F.3d 165, 188 (2d Cir. 2014). Here, the relevant contract provides that "Briggs shall indemnify, defend and hold MediHeat harmless from and against any liability, obligation, judgment, cost or expense (including reasonable attorney's fees) whatsoever arising by reason of or with respect to . . . any claim of bodily injury or death by a use of any [CVS Instant Cold Pain Relief Pack]." CVS's 56.1 Statement ¶ 22; Briggs Agreement 2. The parties agree that this contract "is governed and shall be construed by the laws of Georgia." CVS's 56.1 Statement ¶ 23; *see* Briggs Agreement 2. Accordingly, this Court will apply Georgia law here. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 472 (2d Cir. 2022) ("The general rule under New York law . . . is that 'courts will generally enforce choice-of-law clauses and that contracts should be interpreted so as to effectuate the parties' intent.'") (citation omitted).

Briggs Healthcare does not dispute that MediHeat has incurred expenses "arising by reason of or with respect to" a "claim of bodily injury . . . by use of" a CVS cold pack, *see* Briggs' Opp'n to CVS's Mot. for Summ. J. 4–7 (Dkt. #125), but it argues that the CVS defendants are not entitled to contractual indemnification because plaintiff's failure-to-warn claim "implicate[s] potential negligence on the part of CVS and MediHeat," *id.* at 4. "Georgia law is very clear that a contract does not indemnify the indemnitee against its own negligence unless it says so, because '[p]ublic policy is reluctant to cast the burden of negligent actions upon those who are not actually at fault.'" *United Parcel Service, Inc. v. Colt Sec. Agency, Inc.*, 676 S.E.2d 22, 24 (Ga. 2009) (citation omitted); *see Emergency Pros. of Atlanta, P.C. v. Watson*, 654 S.E.2d 434, 438 (Ga. Ct. App.

4

2007) ("[U]nless a contract for indemnification explicitly and expressly states that the negligence of the indemnitee is covered, this Court will not interpret such an agreement as a promise to save the indemnitee from his own negligence.").

But viewing the facts in the light most favorable to Briggs Healthcare, no reasonable jury could conclude that the CVS defendants supplied the substantive content of the cold pack's warnings. MediHeat's president and chief executive officer submitted a declaration stating that "[t]o the best of my knowledge and recollection, Duro-Med Ind., Inc.," a company that was later acquired by Briggs, "developed and designed the warnings on the . . . cold pack at issue in this lawsuit." *See* Decl. of Yelena Graves, Ex, F ¶ 4 ("Yim Decl. ¶ 4") (Dkt. #123-9). And Briggs Healthcare has not offered competent evidence from which a rational jury could find to the contrary. Briggs seeks to defeat summary judgment through the testimony of its own president, Bradley Mueller. But Mr. Mueller has no personal knowledge of which entity supplied the warnings. *See* Mueller Depo. 10:8–11:25; CVS's 56.1 Statement ¶ 46. Instead, Mr. Mueller inferred that CVS had done so based on an e-mail thread he had obtained from still another MediHeat official with no involvement in the design of the CVS cold packs. *See* Mueller Depo. 11:16–25 (stating that he read the e-mail thread as "basically stat[ing] that the contents for the [cold pack's] label was coming from CVS, a company called SBS as well a[s] correspondence from SBS and the MediHeat personnel"). But the cryptic e-mail thread in question does not discuss the drafting of the warning labels; instead, it indicates that the CVS defendants had supplied "art work" and "die lines" for the product's packaging. *See* Email Chain 2–11; *see* Mueller Depo. 40:23–41:5 (explaining that "die lines are the package parameters; the sizes, lengths, width, the imagery that is needed to create the boxes for the actual product to go inside"). No reasonable

5

juror could infer from that exchange that CVS had written the substance of the warnings for the cold packs.

Nor did Mr. Mueller generate a material dispute of fact through his statements that, in general, "[i]t's the retailer that does the design" of "white label" or "private label" products such as the CVS cold packs. Mueller Depo. 46:7–20; *see id.* at 41:16–25 ("[W]hat the packaging is supposed to look like originates . . . for private label product like this one comes from the retailer, in this case CVS."). As noted above, the critical question here is not which company controlled graphic elements or similar design features, but rather which company determined the warnings consumers should receive. And in any event, because Mr. Mueller had no firsthand knowledge of the development of the CVS cold-pack products, a trier of fact could not reasonably infer simply from Mr. Mueller's understanding of the company's ordinary practices that the CVS defendants were the warnings' source.

Accordingly, there is no genuine dispute that plaintiff's claim "that the cold pack did not contain sufficient warnings and the language used in the warning was inadequate because there was no mention of 'chemical' burns" does not "implicate potential negligence on the part of CVS and MediHeat." Briggs Opp'n to CVS's Mot. for Summ. J. 4. And because Briggs does not contend that the CVS defendants were negligent in any other respect or that plaintiff's claims do not "aris[e] by reason of or with respect to . . . any claim of bodily injury . . . by a use of any [CVS Instant Cold Pain Relief Pack]," CVS's 56.1 Statement ¶ 22; Briggs Agreement 2, the CVS defendants are entitled to summary judgment on plaintiff's contractual indemnification claim.

## II.     Common-Law Indemnification

The CVS defendants' motion for summary judgment is also granted as to their common-law indemnification claim against the Briggs defendants. *See* CVS's Mot. 23–25. "Common-law

6

indemnification" under New York law "is generally available 'in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer.'" *McCarthy v. Turner Const., Inc.*, 953 N.E.2d 794, 798–99 (N.Y. 2011) (citation omitted); *see Fagan v. AmerisourceBergen Cor.*, 356 F. Supp. 2d 198, 221 (E.D.N.Y. 2004) ("Under New York law, the common law right to indemnification 'arises when one party is compelled to pay for the wrong of another.") (citation omitted).  "It has been held that, as among the parties to an action, a party/distributor lower in the chain of distribution is entitled to common-law indemnification from the one highest in the chain of distribution, due to the latter's closer, continuing relationship with the manufacturer and superior position to exert pressure to improve the safety of the product." *Lowe v. Dollar Tree Stores, Inc.*, 835 N.Y.S.2d 161, 162 (N.Y. App. Div. 2007) (collecting cases).

The Briggs defendants argue that common-law indemnification is inappropriate for the same reason discussed with respect to the contractual indemnification claim—that is, that the CVS defendants negligently supplied the cold pack's warnings.  *See* Briggs Opp'n to CVS's Mot. for Summ. J. 4–7; *Fagan*, 356 F. Supp. 2d at 222 ("If CVS ProCare is found to be liable to plaintiff for negligence, it would not be entitled to common law indemnification against ABC, as each party would be independently liable to plaintiff for its own negligence.") (collecting cases).  Because this argument fails and defendants advance no other reason why common-law indemnification is inappropriate, the CVS defendants' motion for summary judgment is granted.

## CONCLUSION

The CVS defendants' motion for summary judgment on their indemnification claims is granted.

SO ORDERED.

                                              _/s/ Rachel Kovner_
                                              RACHEL P. KOVNER
                                              United States District Judge

Dated: March 31, 2023
        Brooklyn, New York